**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 3S Americas Incorporated, | No. CV-25-01690-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Cooper New Energy Company Limited, | |
| Defendant. | |

Before the Court is Defendant Cooper New Energy Co.'s Motion to Dismiss (Doc. 12.) The motion is fully briefed. (Doc. 12, 15, 16.) The Court held oral argument.[1]

**I.    BACKGROUND**

On May 19, 2025, Defendant Cooper New Energy Co.'s executives unveiled its product, the Free Climber Lifter, at the CLEANPOWER 2025 Conference and Exhibition in Phoenix, Arizona. (Doc. 1 ¶ 5.) CLEANPOWER is a trade show event where attendees display their innovations to policy leaders, industry experts, and other corporate leaders. (*Id.* ¶ 6.) The product, displayed as an inoperable prototype, is a traction machine that allows technicians to reach the top of turbines without manually climbing. (Docs. 1-4; 12-1 ¶ 12.) Cooper does not conduct business in the United States. (Doc. 12-1 ¶ 6.)

Plaintiff 3S Americas Inc. was also in attendance. (Doc. 1-1.) 3S is a subsidiary of Ficont, a Chinese safety protection equipment company that has competed with Cooper in China for nearly 15 years. (Doc. 12-1 ¶ 3.) 3S's product, the Climb Auto System, also

---

[1] The Court offered an evidentiary hearing to the parties. (Doc. 18.) Both opted to rely on the briefs.

carries technicians to the top of turbines without manual climbing. (Doc. 1 ¶ 15.) The Climb Auto System is protected by U.S. Patent No. 11,420,849 ("'849 Patent"), assigned to 3S. (*Id.* ¶ 20; Doc. 1-3.)

The CLEANPOWER conference took place from May 19, 2025, to May 22, 2025. (Doc. 1 ¶ 5.) On May 18, 2025, Cooper's prototype was placed in Cooper's booth in preparation for the upcoming event, and that same day, 3S filed suit. (*Id.* ¶ 9.)

3S alleges Cooper's Free Climber Lifter infringes on its '849 patent. (*Id.* ¶ 30.) 3S argues Cooper violated 35 U.S.C. § 271 "by making[,] using, selling, offering for sale, and/or importing" the Free Climber Lifter. (*Id.* ¶ 30.) 3S also contends that Cooper indirectly infringes the '849 patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the product. (*Id.* ¶ 33.) Finally, 3S alleges Cooper contributed to the infringement of the '849 by using, importing, offering for sale, and/or selling the Free Climber Lifter. (*Id.* ¶ 34.)

Cooper filed a Motion to Dismiss. (Doc. 12.) Cooper argues that there are two jurisdictional defects: lack of standing and lack of personal jurisdiction. (*Id.* at 13-17.) It also argues 3S fails to state a claim. (*Id.* at 8-13.) The thrust of Cooper's motion is that the sole act of Cooper displaying a prototype at a trade show is not enough to produce jurisdiction or form the basis of a claim.

## II.     STANDING

### A.     Legal Standard

Before reaching any other question, the Court must satisfy itself that this case presents a justiciable case or controversy. *Steel Co. v. Citizens for a Better Env'*, 523 U.S. 83, 101 (1998). To sue, a plaintiff must have standing under Article III of the Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Issues of standing are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), which authorizes a court to dismiss claims over which it lacks subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). On a motion to dismiss based on lack of standing, the party invoking federal jurisdiction bears the burden of establishing the

elements of Article III standing. *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). In patent cases, courts apply Federal Circuit law to determine standing questions pursuant to the Patent Act. *See e Vision LLC v. Seiko Epson Corp.*, No. 8:23-cv-01858-AB-SHK, 2024 WL 6864489, at *1 (C.D. Cal. Oct. 4, 2024). In deciding a motion to dismiss brought under Rule 12(b)(1) for lack of standing, the Court may consider evidence outside the pleadings. *Indium Corp. of Am. v. Semi-Allows, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985). "[S]tanding is to be determined as of the commencement of suit." *Lujan*, 504 U.S. at 570 n.5; *see also Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) ("[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought.") (citations omitted).

**B.      Discussion**

"[T]he owner of a patent or the owner's assignee can commence an action for patent infringement." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). In patent cases, "the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003). The absence of standing cannot be cured "by the subsequent purchase of an interest in the patent." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) (citations omitted). "'[N]unc pro tunc assignments are not sufficient to confer retroactive standing' where no written transfer of rights under patent had been made at the time claims were brought." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366 (Fed. Cir. 2010).

Accordingly, for 3S to have standing, the rights to the '849 patent must have already been assigned to 3S at the time it brought suit, May 18, 2025. Rights to a patent are deemed assigned when the assignment is executed, not recorded or notarized. *See Krausz Indus. v. Romac Indus.*, No. C10-1204RSL 2011 WL 3563419, at *2 (W.D. Wash. Aug. 15, 2011). The Patent Assignment Cover Sheet, attached as an exhibit to 3S' response brief, lists May 14, 2025, as the date of execution. (Doc. 15-2 at 3.) The Patent Assignment Agreement is undated. (*Id.* at 4-6.)

Cooper argues that 3S bears the burden of establishing standing, and the Assignment

Cover Sheet's listed date of execution does not establish the execution date. (Doc. 16 at 15.) A recorded patent assignment is not conclusively valid, but the recordation "creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010). The Court will not disregard the recorded date of execution because of the mere possibility of an inaccuracy or mistake. Nor will it infer that the cover sheet was fraudulently completed without evidence to the contrary, particularly in light of Mr. Steadman's declaration, which authenticates the Patent Assignment Cover Sheet and Agreement and affirms the May 14, 2025, execution date. (Doc. 15-1 at 2.) Based on the current record, and for the purposes of this Order, the Court finds that the rights to the '849 patent were assigned on May 14, 2025, four days prior to 3S commencing this action. 3S has standing to sue.

### III.  PERSONAL JURISDICTION

#### A.  Legal Standard

Federal Circuit law guides the Court's determination as to whether it possesses personal jurisdiction. *MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1108 (D. Ariz. 2010). "Although for purposes of assessing a motion to dismiss, the facts in the complaint are generally accepted as true, the court 'may not assume the truth of allegations in a pleading which are contradicted by affidavit.'" *E-Vision Optics, LLC v. Luxottica Grp. S.p.A.*, 2024 WL 1601853, at *2 (C.D. Cal. Mar. 8, 2024) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1284 (9th Cir. 1977)). "[W]here the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). "To exercise personal jurisdiction over an out-of-state party, a court must determine whether personal jurisdiction is (1) permitted by the forum state's long-arm statute, and (2) consistent with due process." *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 857 (Fed. Cir. 1999). Arizona's long-arm statute provides

that "[a]n Arizona state court may exercise personal jurisdiction over a person, whether found within or outside Arizona, to the maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a). Because Arizona's long-arm statute is co-extensive with federal due process requirements, specific jurisdiction turns on whether the out-of-state defendant has minimum contacts with Arizona such that exercising jurisdiction would not deprive the defendant of due process. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985).

"There are two kinds of personal jurisdiction—specific and general." *Trintec Indus. v. Pedre Promotional Prods.,* 395 F.3d 1275, 1279 (Fed. Cir. 2005). "If the cause or causes of action in the case arise out of [or relate to] the defendant's contacts with the forum state, the Court may assert 'specific jurisdiction.' If the defendant's contacts with the forum state are continuous and systematic, the Court will have 'general jurisdiction.'" *MMI*, 743 F. Supp. 2d at 1109 (citations omitted). 3S raises no argument with respect to general jurisdiction, so this Court will assess whether it has specific jurisdiction.

The Federal Circuit applies a three-factor test to determine whether specific jurisdiction exists: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether the assertion of personal jurisdiction is 'reasonable and fair.'" *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). When ruling on a question of jurisdiction, the Court may inquire into facts beyond the complaint. *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947).

### B. Discussion

For the Court to exercise specific jurisdiction over Cooper, Cooper must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result

- 5 -

of random, fortuitous, or attenuated contacts . . . ." *Id.* (internal quotation marks and citations omitted). A "single act can support jurisdiction." *Id.* at 475 n.18.

First, the Court makes clear that, despite the parties' focus on the case, the Court will not follow *Medical Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d 1136 (Fed. Cir. 2008). In that case, the Federal Circuit found no personal jurisdiction where the defendant attended one trade show with the accused product. *Id.* at 1141. The court applied the District of Columbia's long-arm statute, which authorizes personal jurisdiction over a defendant for "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." *Id.* at 1139 (quoting D.C. Code § 13-423(a)(3)). The court then assessed whether the plaintiff made a prima facie showing that the defendant caused tortious injury through patent infringement, namely by using a patented invention in the United States in violation of 35 U.S.C. § 271(a). *Id.* at 1140-41.

Here, specific jurisdiction does not depend on a showing of liability under Section 271(a). Unlike the District of Columbia's long-arm statute, Arizona's long-arm statute does not require a defendant to "caus[e] tortious injury" in a forum for a court to exercise specific jurisdiction. *Compare* D.C. Code § 13-423(a)(3) *with* Ariz. R. Civ. P. 4.2(a). Whether an appearance at one trade show amounts to "use" or any other action proscribed by Section 271(a) is not determinative under Arizona's long-arm statute. *Medical Solutions* is therefore uninstructive.

The Court finds that this case is distinguishable from *Synthes (U.S.A.) v. G.M. Does Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297-98 (Fed. Cir. 2009). There, the Federal Circuit held that a Brazilian defendant purposefully directed its activities at residents of the United States because the defendant's employees brought the accused products into the United States and displayed them at a trade show as part of the defendant's "international sales efforts." *Id.* at 1297-98. The out-of-state defendant admitted that its attendance at the trade show was part of the defendant's "international sales efforts," and the defendant had attended a minimum of seven trade shows in the forum state. *Id.* at 1290, 1298. In contrast, there is no indication that Cooper's attendance at a single trade show was

part of any broader effort to sell its product in Arizona.[2] The accused product displayed at the trade show was an inoperable prototype, and it was not shown to the general public. (Docs. 12 at 15; 12-1 ¶ 12.)

This Court is not the first to distinguish between an isolated appearance at a trade show and an appearance that is part of ongoing sales efforts. Several district courts have refused to exercise jurisdiction based on a defendant's attendance at one trade show. *See, e.g., Black & Decker v. Shanghai Xing Te Hao Indus.*, No. 02-cv-4615, 2003 WL 21383325, at *2 (N.D. Ill. June 12, 2003). Those courts find that, absent more, a single appearance at a trade show is insufficient to constitute purposeful availment. *See, e.g., Dareltech, LLC v. Xiaomi Inc.*, No. 18-cv-8729, 2019 WL 3287957, at *8 (S.D.N.Y. July 22, 2019) (distinguishing *Synthes* because "the presence of a single, dysfunctional [accused product] at a two-day promotional event" was not "part of an 'international sales effort.'"); *ASM Assembly Sys. Switz. GmbH v. QTS Eng'g, Inc.*, No. 15-cv-714, 2016 WL 278734, at *2 (S.D. Cal. Jan. 22, 2016) (finding that "a single appearance at an international annual trade show does not constitute 'purposefully direct[ing] its activities' at [forum] residents."). The Court finds that Cooper's attendance at the CLEANPOWER trade show did not constitute purposeful availment, so personal jurisdiction is lacking.

The Court notes that 3S has time to re-file its complaint in a forum with jurisdiction. The declaration of Hanna Lu, Assistant to the Chariman, attached to Cooper's Motion to Dismiss, states 3S shipped four products to Ohio as part of discussions to distribute the products in the United States. (Doc. 12-1 ¶ 9.) Depending on the specific nature of Cooper's conduct and the products, it is possible that one of the federal judicial districts in Ohio may

---

[2] At oral argument, counsel for 3S, for the first time, offered additional evidence for its argument that personal jurisdiction exists in Arizona. He stated that an investigator learned of a statement from the Assistant to the Chairman at Cooper, Hanna Lu, that they were at the Phoenix trade show "for international trade development." The Court will not consider this statement. "It is axiomatic that the arguments of counsel are not evidence." *Goehring v. Wright*, 858 F. Supp. 989, 993 n.4 (N.D. Cal. 1994). The parties were permitted the opportunity to present additional evidence at the hearing and both declined. 3S could have obtained a declaration from the investigator or sought discovery from the assistant, but did not do so. The statement is also inadmissible hearsay under Rules 801 and 802 of the Federal Rules of Evidence. Although the assistant may qualify as a party opponent under Rule 801(d)(2)(D), the investigator's out-of-court statement to counsel is inadmissible hearsay.

exercise jurisdiction over this case. Without knowing more about the nature of Cooper's activity in Ohio, the Court will not assume jurisdiction.[3]

The Court will not address the parties' arguments concerning whether 3S has adequately stated a claim. A court deciding a jurisdictional motion to dismiss must not reach the merits. *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause"); *see also Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011). "Only after this initial inquiry is completed and the Court . . . takes jurisdiction over the case does it consider the facts specific to the plaintiff's case to determine whether on the facts the plaintiff's claim falls within the terms of the statutes." *Greenlee County v. U.S.*, 487 F.3d 871, 876 (Fed. Cir. 2007) (citation modified).

The Court will not grant leave to amend. Because the parties were afforded the opportunity to present evidence at an evidentiary hearing on Cooper's Motion to Dismiss (Doc. 12), there are no additional facts that could be pled that could subject Cooper to personal jurisdiction in Arizona. Amendment would be futile, so the Court denies leave to amend. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (leave to amend is properly denied if amendment would be futile); *see also See Wilke v. Pacheco*, No. 1:23-cv-00134-BLW, 2023 WL 5614908, at *4 n.1 (D. Idaho Aug. 30, 2023) ("Where, as here, the motion to dismiss is based on a lack of personal jurisdiction under the auspices of Rule 12(b)(2), there is no guidance from the Circuit that the plaintiff should be granted leave to amend. Presumably, that is because an amended complaint cannot cure a plaintiff's failure to make a prima facie factual showing that the Court has personal jurisdiction over the defendants.").

---

[3] At oral argument, 3S contended that this evidence demonstrates that the United States has personal jurisdiction over Cooper, even if the Court finds that Arizona does not. *See* Fed. R. Civ. P. 4(k)(2). To the extent any shipment of products evinces Cooper's purposeful availment to Ohio, an Ohio federal judicial district's jurisdiction would deprive this Court of jurisdiction under Rule 4(k)(2). Fed. R. Civ. P. 4(k)(2) (stating that the United States has jurisdiction only over cases where "the defendant is not subject to jurisdiction in any state's courts"). The Court will not find that it has jurisdiction under Rule 4(k)(2) on this record.

IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 12) is **GRANTED**. This Court does not have personal jurisdiction over Defendant, so the case must be dismissed.

**IT IS FURTHER ORDERED** dismissing this case without prejudice.

**IT IS FINALLY ORDERED** directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 8th day of January, 2026.

Michael T. Liburdi
United States District Judge